UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12351-RGS

AZIMA DLI, LLC

v.

I-CARE RELIABILITY, INC., and I-CARE SPRL

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

February 25, 2019

STEARNS, D.J.

Azima DLI, LLC, brought this lawsuit against I-Care Reliability, Inc., and I-Care SprL[1] for misusing its proprietary information to develop competing products and services.[2] The Complaint sets out four claims against both defendants: breach of contract (Count I), conversion (Count II), breach of the implied covenant of good faith and fair dealing (Count III), and

---

[1] Although the Complaint named "I-Care Group SprL" as a defendant, I-Care Reliability asserts, and Azima does not dispute, that I-Care SprL is the correct entity. Opp'n (Dkt # 30) at 1 n.1.

[2] Azima is a Delaware LLC with a principal place of business in Massachusetts. Compl. ¶ 7. Its sole member is Delaware corporation with a principal place of business in Massachusetts. Dkt # 13. I-Care SprL is a Belgian corporation with a principal place of business in Belgium. *Id.* I-Care Reliability is a Texas company with a principal place of business in Texas. *Id.*

unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A (Count IV). I-Care Reliability moves to dismiss itself from the Complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim. For the reasons to be explained, I-Care Reliability's motion to dismiss for lack of personal jurisdiction will be allowed.

## BACKGROUND

The facts, viewed in the light most favorable to Azima as the nonmoving party, are as follows. Both Azima and I-Care SprL develop products that analyze vibration data to predict equipment failures in heavy machinery. On May 5, 2015, Ray Garvey, working on behalf of I-Care SprL, entered into a Mutual Confidentiality Agreement with Azima to explore a potential business relationship between the two companies. On July 1, 2015, Azima and I-Care SprL formally entered into a Mutual Confidentiality Agreement. In both agreements, Azima agreed to share proprietary information, which I-Care SprL agreed to use for the sole purpose of considering the potential partnership. Azima alleges, however, that I-Care SprL and Garvey misused that information not only to research and develop a competing "I-DNA" product, but also to file four patent applications. Azima further alleges that I-Care Reliability, through Garvey and codirector Fabrice Brion, similarly misused the information.

I-Care Reliability, in turn, argues that the court lacks personal jurisdiction over it because it is not a party to the two confidentiality agreements nor did it have any contacts with Massachusetts relating to the agreements or Azima's claims. In response, Azima asserts that I-Care Reliability has acted as I-Care SprL's agent in the United States and that Garvey has at times held himself out as an I-Care Reliability employee.

## DISCUSSION

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Under this standard, the court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). The plaintiff bears the burden of establishing that the court has personal jurisdiction over a named defendant. *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008).

To exercise personal jurisdiction, the court must find (1) that sufficient contacts exist between the defendant and the forum to satisfy the state long-arm statute, and (2) that the assertion of jurisdiction does not offend the Due

Process Clause of the Fourteenth Amendment. *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Since "the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States," it is appropriate to dispense with the statutory inquiry and "proceed directly to the constitutional analysis." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) (citations omitted). Here, because Azima relies on a claim of specific jurisdiction, the constitutional test "has three components: relatedness, purposeful availment, and reasonableness." *Knox v. MetalForming, Inc.*, 2019 WL 364021, at *4 (1st Cir. 2019). The First Circuit has explained the three-part test as follows:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 61 (1st Cir. 2002) (citation omitted).

I-Care Reliability maintains, and the court agrees, that Azima has not demonstrated a sufficient nexus between I-Care Reliability's activities in the forum and Azima's claims. *See Phillips*, 530 F.3d at 27 ("There must be more

4

than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case.") (alteration in original and citations omitted). Of decisive significance, I-Care Reliability is not a party to the two confidentiality agreements that give rise to the litigation. Nor could it have been as the company was only formed on February 8, 2016, Opp'n (Dkt # 30) at 4, more than six months after the agreements were executed. And as a Texas corporation with a principal place of business in Texas, I-Care Reliability has no physical presence in Massachusetts: it is not registered, licensed, or authorized to do business in Massachusetts, nor does it have property or offices in the Commonwealth.

Azima's three arguments in favor of jurisdiction are unconvincing. First, Azima contends that the court should invoke the equitable "veil-piercing" doctrine and find I-Care Reliability to be an "agent or alter ego" of I-Care SprL. Opp'n (Dkt # 30) at 10. The Complaint alleges that I-Care SprL "exercised decision-making authority over its subsidiary," I-Care Reliability,[3] Compl. ¶ 30, and that I-Care Reliability "was established in 2016

---

[3] I-Care Reliability and I-Care SprL are actually two subsidiaries of the same parent, I-Care Holding SA, Mem. (Dkt # 20) at 2 n.1, a fact that Azima admits in its Opposition. *See* Opp'n (Dkt # 30) at 5 ("I-Care Reliability and I-Care SprL share a common parent.").

5

as I-Care [SprL]'s agent for the purpose of carrying out I-Care [SprL's] business in the United States," Compl. ¶ 14.

Although Azima correctly notes that an agent's contacts with the forum can confer jurisdiction on a principal, *Daynard*, 290 F.3d at 55, Azima's conclusory allegation that I-Care Reliability is an "agent" of I-Care SprL falls short of what is required. *See Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001) (rejecting plaintiff's conclusory allegation of an agency relationship for failure to "verify the facts alleged through materials of evidentiary quality . . . even under the relatively relaxed prima facie standard"). Conclusory allegations are also insufficient to overcome the reluctance of the Massachusetts Supreme Judicial Court to sanction piercings of the corporate veil. *See Spaneas v. Travelers Indemnity Co.*, 423 Mass. 352, 354 (1996) ("Only in rare instances, in order to prevent gross inequity, will a Massachusetts court look beyond the corporate form.").

Massachusetts corporate common law treats corporations as separate and distinct entities, no matter the legal relationships that may exist between or among them. *Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 766 (2008). This is true even where the relationship is parent and subsidiary. *See Birbara v. Locke*, 99 F.3d 1233, 1238 (1st Cir. 1996) (detailing failed attempt by injured creditors to impose liability for a subsidiary's breach of contract on the

parent company and its officers).  Under Massachusetts law, "[a] veil may be pierced [only] where the parent exercises 'some form of pervasive control' of the activities of the subsidiary 'and there is some fraudulent or injurious consequence of the intercorporate relationship.'"  *Scott*, 450 Mass. at 767, quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968).  Azima's generic allegations of an agency relationship between I-Care SprL and I-Care Reliability establish neither pervasive control nor fraud.  I-Care Reliability, therefore, cannot be bound by the two agreements to which it was not a party and that predated its formation.

Alternatively, Azima argues that Brion and Garvey, who served as directors of I-Care Reliability and worked for I-Care SprL, "played critical roles in the genesis and breach" of the confidentiality agreements, Opp'n (Dkt # 30) at 11, and that, as a result, their actions can be fairly attributable to I-Care Reliability.  Azima further asserts that Garvey has, from time to time, held himself out as an agent or employee of I-Care Reliability.[4]  For instance, he identified himself as an "R&D Engineer, I-Care-Reliability, Inc."

---

[4] Garvey's status as an I-Care Reliability employee is disputed.  In a sworn declaration, Ben Detober, the CEO of I-Care Reliability, states that "Garvey has never been employed or retained on behalf of I-[C]are Reliability."  Mem. (Dkt # 20), Ex. 1 ¶ 8.

in a 2018 white paper and at two conferences in 2016 and 2017, neither of which took place in Massachusetts. Reddy Decl. (Dkt # 31), Exs. 3-4, 7.

The fact that Brion and Garvey held corporate positions in I-Care SprL and I-Care Reliability does not provide a basis for a lifting of the veil. *See My Bread Baking Co.*, 353 Mass. at 619 ("[C]ommon ownership . . . together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation or its employees."). Moreover, Massachusetts law recognizes the rule of Restatement (Second) of Agency § 27 (1958), that apparent authority (which, in effect, is what Azima is arguing with respect to Garvey's self-professed role as I-Care Reliability's agent) can arise only from the conduct of the principal (I-Care Reliability), and not that of the purported agent (Garvey). *See Licata v. GGNSC Malden Dexter LLC*, 466 Mass. 793, 801 (2014) ("Only the words and conduct of the principal, however, and not those of the agent, are considered in determining the existence of apparent authority."). There is no allegation here that I-Care Reliability ratified Garvey's declarations or engaged in conduct that would have led a third party to reasonably believe that Garvey had been designated to act on its behalf.[5]

---

[5] Azima's third and final contention is the weakest: that after I-Care Reliability was founded, Brion and Garvey approached Azima (in October of 2016) with a draft agreement under which I-Care Reliability would provide

Ultimately, while Brion and Garvey may have played a role in the formation and breach of the disputed agreements, it cannot be said that I-Care Reliability, which did not exist until well after the agreements were executed, engaged in "activity in the forum state [that] was 'instrumental either in the formation of the contract or its breach.'" *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007), quoting *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999). In short, because Azima has failed to satisfy the relatedness prong, it is unnecessary to address the remaining jurisdictional tests. *See Phillips Exeter Acad.*, 196 F.3d at 288 ("An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction.").

## ORDER

For the foregoing reasons, I-Care Reliability's motion to dismiss the Complaint for lack of personal jurisdiction is <u>ALLOWED</u>.[6]

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

Azima a license to certain intellectual property in exchange for Azima's development assistance. However, this draft agreement, unlike the agreements between Azima and I-Care SprL, was never executed.

[6] Having so concluded, the court need not reach I-Care Reliability's alternative motion to dismiss for failure to state a claim.